1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

PAOLO PRONESTI,

Case No. 2:15-cv-01994-JAD-PAL

8

Plaintiff,

9

v.

**ORDER**
– AND –
**REPORT OF FINDINGS AND
RECOMMENDATION**

10

DEPARTMENT OF FAMILY SERVICES, et al.,

11

Defendants.

(IFP Application – ECF No. 1)

12

13      This matter is before the court on Plaintiff Paolo Pronesti's Application to Proceed *In*

14  *Forma Pauperis* (ECF No. 1).  This Application is referred to the undersigned pursuant to 28

15  U.S.C. § 636 (b)(1) and Local Rules LR IB 1-3 and 1-4 of the Local Rules of Practice.

16  **I.      IN FORMA PAUPERIS APPLICATION**

17      Mr. Pronesti is proceeding in this action *pro se*, which means that he is not represented by

18  an attorney.  *See* LSR 2-1.  Pursuant to 28 U.S.C. § 1915 and LSR 1-1 of the Local Rules of

19  Practice, any person who is unable to prepay the fees in a civil case may apply to the Court for

20  authority to proceed *in forma pauperis* ("IFP"), meaning without prepaying the full $400 filing

21  fee.  Here, Pronesti has requested authority to proceed IFP and submitted the affidavit required by

22  § 1915(a) showing that he is unable to prepay fees and costs or give security for them.

23  Accordingly, his request to proceed IFP will be granted.  The court will now review his complaint.

24  **II.     SCREENING THE COMPLAINT**

25      After granting a litigant's IFP request, a federal court must screen the complaint and any

26  amended complaints filed prior to a responsive pleading pursuant to § 1915(e).  *Lopez v. Smith*,

27  203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (§ 1915(e) applies to "all in forma pauperis

28  complaints").  If the complaint states a valid claim for relief, the court will direct the Clerk of the

Court to issue summons to the defendant(s) and the plaintiff must then serve the summons and complaint within 90 days. *See* Fed. R. Civ. P. 4(m). When a court dismisses a complaint pursuant to § 1915(e), a plaintiff is ordinarily given leave to amend with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Allegations in a *pro se* complaint are held to less stringent standards than formal pleading drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, *pro se* litigants "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); rather, they must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

### A. Mr. Pronesti's Factual Allegations and Claims for Relief

The complaint (ECF No. 1-1) alleges that Pronesti is the natural father of the minor child "G.P." *Id.* at 5. His claims arise from the custody dispute between G.P.'s parents in state family court and the related allegations of domestic violence and child neglect. Mr. Pronesti names the following defendants in his proposed complaint: Clark County; the Department of Family Services ("DFS"); Elizabeth Floyd, case manager; Jennifer Barowitz, senior supervisor; Jennifer Scagnolli, investigator; Kristen Reedy, G.P.'s mother; Lois Schneider, Reedy's attorney; and Sharron Plamondon, Reedy's mother. The complaint is difficult to decipher, but appears to allege that various defendants and local agencies relied upon false statements about domestic violence to recommend that the family court grant Reedy sole custody of G.P.

Both Pronesti and Reedy sought protective orders from the family court in 2013. Mr. Pronesti alleges that Reedy's petition for a protective order was a conspiracy between Schneider, Plamondon, and Reedy to persuade investigator Scagnolli that Reedy was a victim of domestic violence. The object of the conspiracy was to gain a tactical advantage in the child custody matter before the family court in case no. D-13-486752-C, in order to deprive Pronesti of equal or joint physical custody. They persuaded investigator Scagnolli to place Reedy in a shorter series of domestic violence classes than Pronesti, making primary custody more obtainable for Reedy.

Scagnolli recommended a safety plan that allegedly neglected G.P.'s wellbeing and safety and was designed to deprive Pronesti of a joint custody order.  Floyd and Barowitz jointly submitted a written recommendation to the family court.  Mr. Pronesti alleges that Floyd withheld information from the family court showing that Reedy violated a protective order and misrepresented his statements.  The family court awarded sole custody of G.P. to Reedy.

The complaint alleges defendants deprived Pronesti of the "natural course of the courts," a fair opportunity to receive joint custody, visitation, and a safe means of child exchange, which violated his rights under the Fourteenth Amendment.  In his request for relief, he states that he is entitled to get a fair opportunity to obtain a custody order that would foster the same relationship he had with G.P. before the DFS case plan caused a detachment.  He seeks injunctive relief and $1,100 per day in compensatory damages for mental distress, pain, and suffering.

For the reasons discussed below, the court finds that the complaint fails to allege a federal jurisdictional basis for his claims.

**B.  Jurisdictional Defects**

Federal courts are courts of limited jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  A court's jurisdiction to resolve a case on its merits requires a showing that the plaintiff has both subject matter and personal jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock West*, *Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Federal district courts do not have appellate jurisdiction over state courts, whether by direct appeal, mandamus, or otherwise.  *See, e.g.*, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).  This principle has become known as the *Rooker-Feldman* doctrine, and it provides that federal courts lack jurisdiction to exercise appellate review over final state court judgments.  *Id.*; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005).  In general, the *Rooker-Feldman* doctrine prevents "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States

3

district court." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 611 (9th Cir. 2009) (internal citation omitted). Stated differently, the doctrine bars a party who loses in state court from filing an action in federal court complaining of injuries caused by state-court judgments and asking the federal court to review and reject those judgments. *Saudi Basic Indus.*, 544 U.S. at 283–84.

Additionally, the "domestic relations exception" prevents federal courts from exercising jurisdiction in child custody matters. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992); *see also Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983) (per curiam) ("[F]ederal courts have uniformly held that they should not adjudicate cases involving domestic relations."). Since the landmark case of *In Re Burrus*, 136 U.S. 586 (1890), federal courts have uniformly abstained from adjudicating cases involving domestic relations issues, which include child custody and visitation disputes. *Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968); *Peterson*, 708 F.2d at 466. The subject matter of domestic relations and particularly child custody problems is generally considered a state law matter. *Id.* Federal abstention is appropriate in such cases based on: (1) the strong state interest in domestic relations matters, (2) the state courts' superior competence in settling family disputes, and (3) the possibility of incompatible federal and state court decisions since the state exercises ongoing judicial supervision. *Peterson*, 708 F.2d at 466 (citing *Moore v. Sims*, 442 U.S. 415 (1979)); *see also Santos v. Cty. of L.A. Dep't of Children & Family Servs.*, 299 F. Supp. 2d 1070, 1077 (C.D. Cal. 2004), *aff'd*, 200 F. App'x 681 (9th Cir. 2006) ("To the extent Santos seeks reinstatement of Albert's custody or relief with respect to his care and custody, the court lacks jurisdiction."). Abstention is proper even if the case raises constitutional issues and is premised on alleged federal constitutional violations. *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987). "If the constitutional claims in the case have independent merit, the state courts are competent to hear them." *Id.*

At their core, plaintiff's claims arise out of a child custody and visitation dispute. Pronesti essentially seeks to have this court overturn the family court's decisions and award him joint custody of G.P. This court has no authority to do so. His claims are, therefore, barred by the *Roker-Feldman* doctrine and the domestic relations exception to federal subject matter jurisdiction. Because it is clear from the face of the complaint that the court lacks subject matter jurisdiction

and the nature of the asserted claims precludes any possibility that Pronesti could cure the jurisdictional defect by amendment, the undersigned recommends that this case be dismissed with prejudice.

Based on the foregoing,

**IT IS ORDERED**:

1. Plaintiff Paolo Pronesti's Application to Proceed *In Forma Pauperis* (ECF No. 1) is **GRANTED**.  He is not required to pay the $400 filing fee.

2. The Clerk of the Court shall FILE the Complaint (ECF No. 1-1) but SHALL NOT issue summons.

3. Pronesti is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor.

**IT IS RECOMMENDED** that this action be **DISMISSED with prejudice** and the Clerk of the Court be instructed to enter judgment accordingly.

Dated this 25th day of January, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

This Report of Findings and Recommendation is submitted to the assigned district judge pursuant to 28 U.S.C. § 636(b)(1) and is not immediately appealable to the Court of Appeals for the Ninth Circuit.  Any notice of appeal to the Ninth Circuit should not be filed until entry of the district court's judgment.  *See* Fed. R. App. P. 4(a)(1).  Pursuant to LR IB 3-2(a) of the Local Rules of Practice, any party wishing to object to a magistrate judge's findings and recommendations of shall file and serve *specific written objections*, together with points and authorities in support of those objections, within 14 days of the date of service.  *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  The document should be captioned "Objections to Magistrate Judge's Report of Findings and Recommendation," and it is subject to the page limitations found in LR 7-3(b).  The parties are advised that failure to file objections within the specified time may result in the district

court's acceptance of this Report of Findings and Recommendation without further review.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).   In addition, failure to file timely objections to any factual determinations by a magistrate judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991); Fed. R. Civ. P. 72.